DONG, ADAM'S LAW FIRM PLLC
Adam Dong, Esq.
3708 Main St, Suite 308
Flushing, NY 11354
Tel:     (929) 269-5666
*Attorneys for Plaintiffs, proposed FLSA Collective*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x

HONG JIANG,
XIANHUA LIN,
YAN LIU, and
YINGYING ZHAO,
*on behalf of themselves and others similarly situated*

                                        *Plaintiffs*,

                        v.

LASH BELLE EYELASH EXTENSIONS INC
d/b/a LASH BELLE EYELASH EXTENSIONS,
MISEON KIM a.k.a MINA KIM,
and LIHUA HAN a.k.a EVA HAN,

                                *Defendants*.

———————————————————————x

**Case No. 20-cv- 06531**


**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION**


**COMPLAINT**

        Plaintiffs HONG JIANG, XIANHUA LIN, YAN LIU, and YINGYING ZHAO (hereinafter referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Dong, Adam's Law Firm PLLC. and Adam Dong, Esq., hereby bring this complaint against Defendants LASH BELLE EYELASH EXTENSIONS INC d/b/a LASH BELLE EYELASH EXTENSIONS, MISEON KIM a.k.a MINA KIM, and LIHUA HAN a.k.a EVA HAN (collectively referred to as "Defendants") and allege as follows:

## INTRODUCTION

1.        This action is brought by Plaintiffs HONG JIANG, XIANHUA LIN, YAN LIU, and YINGYING ZHAO on behalf of themselves and other similarly situated employees against

1

Defendants for alleged violations of the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a patterned practice of failing to pay its employees, including the Plaintiffs, minimum wage for all hours worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wage for regular hours worked, (2) unpaid overtime wages, (3) liquidated damages, (3) prejudgment and post-judgment interest; and (4) attorneys' fees and cost.

4.      Plaintiffs allege pursuant to NYLL § 650 *et seq.,* and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid wage for regular hours worked, (2) unpaid overtime wages, (3) unpaid spread-of-hours premium, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five thousand dollars ($5,000) per plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employees' hours along with the employee's name, employer's address and telephone number, employee's rate or rates of pay, and deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid spread-of-hours premium, and unpaid overtime compensation, 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) reasonable attorney's fees and costs.

## **JURISDICTION AND VENUE**

5.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

### PLAINTIFFS

7.     From on or about March 7, 2019 to August 11, 2020, Plaintiff Hong Jiang was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Avenue, #201, White Plains, NY 10605.

8.     From on or about June 1, 2018 to August 13, 2020, Plaintiff Xianhua Lin was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Avenue, #201, White Plains, NY 10605.

9.     From on or about May 23, 2019 to August 12, 2020, Plaintiff Yan Liu was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Avenue, #201, White Plains, NY 10605.

10.    From on or about February 1, 2019 to August 10, 2020, Plaintiff Yingying Zhao was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Avenue, #201, White Plains, NY 10605.

11.    All Plaintiffs did not work from on or about March 17, 2020 to June 24, 2020 due to the Covid-19 Pandemic.

12.    During all relevant period, Plaintiffs were not exempt employees under either FLSA or

NYLL.

**DEFENDANTS**

*Corporate Defendants*

**LASH BELLE EYELASH EXTENSIONS INC.**

13.     Defendant Lash Belle Eyelash Extensions Inc is a domestic business corporation organized under the laws of the State of New York with a principal address at 470 Mamaroneck Avenue, #201, White Plains, NY 10605.

14.     Lash Belle Eyelash Extensions Inc is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

15.     Upon information and belief, during relevant period, Lash Belle Eyelash Extensions Inc on average had gross revenue exceeding $2000 per day.

16.     During relevant period, there were at least 4 to 5 employees working at the same time on weekdays, and 6 to 7 employees work at the same time on weekends.

17.     During relevant period, on average, each employee serves at least 6 to 7 customers per day, and each customer spends at least $130 on average.

18.     Lash Belle Eyelash Extensions Inc purchased and handled goods moved in interstate commerce.

19.     Lash Belle Eyelash Extensions Inc was and continues to be an enterprise engaged in commerce within the meaning of the FLSA.

20.     The work performed by Plaintiffs were directly essential to the business operated by Lash Belle Eyelash Extensions Inc.

**Owner/ Operator Defendants**

21.     The Individual Defendants are officers, directors, managers and/or majority shareholders

or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

22. Miseon Kim a.k.a Mina Kim, is the president/owner of Lash Belle Eyelash Extensions Inc. Miseon Kim (1) had the power to hire and fire employees on behalf of Corporate Defendant, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Lash Belle Eyelash Extensions Inc.

23. Miseon Kim hired Plaintiff Yan Liu.

24. Miseon Kim together with Lihua Han determined Plaintiffs' work schedules.

25. Miseon Kim supervised Plaintiffs.

26. Miseon Kim together with Lihua Han determined Plaintiffs' rates of pay.

27. Miseon Kim paid employees of Lash Belle Eyelash Extensions Inc.

28. Miseon Kim maintained all employee records and business records of Lash Belle Eyelash Extensions Inc.

29. Miseon Kim acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Lash Belle Eyelash Extensions Inc.

30. Lihua Han a.k.a Eva Han, is business partner of Miseon Kim, upon information and belief, Lihua Han is also shareholder of Lash Belle Eyelash Extensions Inc. Lihua Han also (1) had the power to hire and fire employees on behalf of Corporate Defendant, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employee records at Lash Belle Eyelash Extensions Inc.

31.     Lash Belle Eyelash Extensions Inc had authority to hire and fire employees on behalf of Lash Belle Eyelash Extensions Inc.

32.     Lihua Han hired Plaintiff Hong Jiang.

33.     Lihua Han together with Miseon Kim determined employees' work schedules.

34.     Lihua Han and Miseon Kim would take turns to stay in the store to supervise employees and day to day operation of Lash Belle Eyelash Extensions Inc.

35.     Lihua Han personally delivered paychecks and cash payment to Plaintiffs.

36.     Lihua Han maintained employee records and business records of Lash Belle Eyelash Extensions Inc.

37.     Lihua Han acted intentionally and maliciously, and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Lash Belle Eyelash Extensions Inc.

## STATEMENT OF FACTS

38.     Defendants committed the following alleged acts knowingly, intentionally, and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class Plaintiffs:

39.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the minimum wage under FLSA and NYLL for each hour worked.

40.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs the lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

41.    While employed by Defendants, Plaintiff was not exempt under federal or state laws requiring employers to pay employees overtime compensation.

42.    Upon information and belief, Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

43.    Defendants knowingly and willfully failed to provide Plaintiff and similar situated employees with Time of Hire Notice reflecting true rates of pay and payday, as well as paystub that lists employees' name, employer's name, employees' rate of pay, any deductions made from the employees' wages. Defendants did not furnish any notice to Plaintiffs during their employment at Lash Belle Eyelash Extensions Inc.

44.    Defendants knew that the nonpayment of minimum wage and overtime pay would financially injure Plaintiffs and violate state and federal laws.

### *Plaintiff Hong Jiang*

45.    From on or about March 7, 2019 to August 11, 2020, Plaintiff Hong Jiang was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Ave, #201, White Plains, NY 10605.

46.    From March 7, 2019 to on or about July 6, 2020, Ms. Jiang was paid on a flat daily rate.

47.    From on or about March 7, 2019 to March 31, 2019, Ms. Jiang was paid $120 per day. During this period, Ms. Jiang worked 3 days per week.

48.    From on or about April 1, 2019 to May 31, 2019, Ms. Jiang was paid $130 per day. During this period, Ms. Jiang worked 4 days per week.

49.    From on or about June 1, 2019 to March 10, 2020, Ms. Jiang was paid $130 per day. During this period, Ms. Jiang worked 5 days per week.

50.    From on or about March 11, 2020 to March 17, 2020, Ms. Jiang was paid $140 per day.

During this period, Ms. Jiang worked 5 days per week.

51.     Ms. Jiang returned to work on June 25, 2020 after the New York State announced that it was safe to go back to work. During the first week of her return, Ms. Jiang was paid at $140 per day. During this period, Ms. Jiang worked 4 days per week.

52.     From on or about July 6, 2020 to August 11, 2020, Defendants changed their pay policy and started paying Ms. Jiang on an hourly basis, at $14 per hour. During this period, Ms. Jiang worked 4 days per week.

53.     Throughout Ms. Jiang's employment at Lash Belle Eyelash Extensions Inc, she was transported to work from Flushing, NY to White Plains, NY by a company shuttle.

54.     The company shuttle would pickup Ms. Jiang together with other employees, every morning at around 8:40 AM, at the intersection between Parsons Blvd and 34th Ave in Flushing NY.

55.     The company shuttle would then transport employees of Lash Belle Eyelash Extensions Inc to its store in White Plains. On average, the travel time is around 35 to 45 minutes, depending on traffic.

56.     Almost every day, Ms. Jiang arrived at Defendants' store at around 9:15 AM to 9:30 AM.

57.     Upon arriving at Defendants' store, Ms. Jiang started working by doing sanitation work or other miscellaneous works.

58.     Although Ms. Jiang's scheduled work time starts at 10 AM, she almost always started working before 9:30 AM.

59.     During her day at work, Ms. Jiang was not afforded fixed time for lunch, she was only given at most 15 to 20 minutes to eat, and even then, when customers came in, Ms. Jiang had to stop eating and serve customers.

60.     Although Ms. Jiang's scheduled work time ends at 7:00 PM, she almost always worked until 7:30 PM, often beyond 7:45 PM, and occasionally worked beyond 8:00 PM.

61.     Ms. Jiang's daily rate did not change regardless how many hours she worked during the day.

62.     After work, Ms. Jiang would be transported back to Flushing by the same company shuttle.

63.     During Ms. Jiang's employment at Lash Belle Eyelash Extensions Inc, she regularly worked more than 10 hours per day on any given workday.

64.     At all relevant times, Ms. Jiang was not paid at least one- and one-half times of her regular rate for hours worked above forty (40) in each workweek.

65.     Throughout her employment, Ms. Jiang was not compensated for New York's spread of hours premium for shifts that lasted longer than ten (10) hours at the minimum wage.

66.     Prior to July 6, 2020, Ms. Jiang was never informed of her hourly rate.

67.     At all relevant times, Ms. Jiang was never informed of any tip credit deduction toward the minimum wage.

68.     At all relevant times, Defendants did not provide Ms. Jiang and other similar situated employees with Time of Hire Notice detailing rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

69.     At all relevant times, Defendants did not provide Ms. Jiang and all other similar situated employees with statements every payday that accurately listed all of the following: the dates of work covered by the payment of wages; the employee's name; the name of the employer; the address and phone number of employer; the employee's rate or rates of pay and basis thereof; the

employee's gross wages; the employees' deductions; allowances, if any, claimed as part of the minimum wage; net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

70.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

71.     Defendants failed to maintain accurate and sufficient time records of employees' hours worked, failed to provide such records to employees, and failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the New York Labor Law.

72.     At all relevant times, Ms. Jiang was not an exempt employee under either FLSA or NYLL.

### Plaintiff Xianhua Lin

73.     From on or about June 1, 2018 to August 13, 2020, Plaintiff Xianhua Lin was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Ave, #201, White Plains, NY 10605.

74.     From July 1, 2018 to on or about July 6, 2020, Ms. Lin was paid on a flat daily rate.

75.     From on or about June 1, 2018 to June 30, 2018, Ms. Lin was NOT COMPENSATED AT ALL.

76.     From on or about July 1, 2018 to August 31, 2018, Ms. Lin was paid $50 per day.

77.     From on or about September 1, 2018 to February 28, 2019, Ms. Lin was paid $70 per day.

78.     From on or about March 1, 2019 to July 31, 2019, Ms. Lin was paid $90 per day.

79.     From on or about August 1, 2019 to September 30, 2019, Ms. Lin was paid $100 per day.

80.     From on or about October 1, 2019 to March 10, 2020, Ms. Lin was paid $110 per day.

81.     From on or about March 11, 2020 to March 17, 2020, Ms. Lin was paid $120 per day.

82.     Prior to June 25, 2020, Ms. Lin always worked either 5 or 6 days per week, on average, she worked 5.5 days per week from June 1, 2018 to March 17, 2020.

83.     From on or about June 25, 2020 to July 5, 2020, Ms. Lin was paid $120 per day.

84.     From on or about July 6, 2020 to August 13, 2020, Ms. Lin was paid at $13 per hour.

85.     From June 25, 2020 to August 13, 2020, Ms. Lin worked either 3 or 4 days per week, on average, she worked 3.5 days per week during this period.

86.     Throughout Ms. Lin's employment at Lash Belle Eyelash Extensions Inc, she was transported to work from Flushing, NY to White Plains, NY by a company shuttle.

87.     The company shuttle would pick up Ms. Lin together with other employees, every morning at around 8:40 AM, at the intersection between Parsons Blvd and 34th Ave in Flushing NY.

88.     The company shuttle would then transport employees of Lash Belle Eyelash Extensions Inc to its store in White Plains. On average, the travel time is around 35 to 45 minutes, depending on traffic.

89.     Almost every day, Ms. Lin arrived at Defendants' store at around 9:15 AM to 9:30 AM.

90.     Upon arriving at Defendants' store, Ms. Lin would start working by doing sanitation work or other miscellaneous works.

91.     Although Ms. Lin's scheduled work time starts at 10 AM, she almost always started working before 9:30 AM.

92.     During her day at work, Ms. Lin was not afforded fixed time for lunch, she was only given at most 15 to 20 minutes to eat, and even then, when customers came in, Ms. Lin had to stop eating and serve customers.

93.     Although Ms. Lin's scheduled work time ends at 7:00 PM, she almost always worked until 7:30 PM, often beyond 7:45 PM, and occasionally worked beyond 8:00 PM.

94.     Ms. Lin's daily rate did not change regardless how many hours she worked during the day.

95.     After work, Ms. Lin would be transported back to Flushing by the same company shuttle.

96.     During Ms. Lin's employment at Lash Belle Eyelash Extensions Inc, she regularly worked more than 10 hours per day on any given workday.

97.     At all relevant times, Ms. Lin was not paid at least one and one half of her regular rate for hours worked above forty (40) in each workweek.

98.     At all relevant times, Ms. Lin was not paid at least the minimum wage under FLSA or NYLL for some of the hours she worked.

99.     Throughout her employment, Ms. Lin was not compensated for New York's spread of hours premium for shifts that lasted longer than ten (10) hours at the minimum wage.

100.    Prior to July 6, 2020, Ms. Lin was never informed of her hourly rate.

101.    At all relevant times, Ms. Lin was never informed of any tip credit deduction toward the minimum wage.

102.    At all relevant times, Defendants did not provide Ms. Lin and other similar situated employees with Time of Hire Notice detailing rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

103.    At all relevant times, Defendants did not provide Ms. Lin and all other similar situated employees with statements every payday that accurately listed all of the following: the dates of work covered by the payment of wages; the employee's name; the name of the employer; the address and phone number of employer; the employee's rate or rates of pay and basis thereof; the employee's gross wages; the employees' deductions; allowances, if any, claimed as part of the

minimum wage; net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

104.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

105.     Defendants failed to maintain accurate and sufficient time records of employees' hours worked, failed to provide such records to employees, and failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the New York Labor Law.

106.     During all relevant times, Ms. Lin was not an exempt employee under either FLSA or NYLL.

### Plaintiff Yan Liu

107.     From on or about May 23, 2019 to August 12, 2020, Plaintiff Yan Liu was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Ave, #201, White Plains, NY 10605.

108.     From May 23, 2019 to on or about July 6, 2020, Ms. Liu was paid on a flat daily rate.

109.     From on or about May 23, 2019 to October 31, 2019, Ms. Liu was paid $100 per day. During this period, Ms. Liu worked either 5 or 6 days per week, on average, she worked 5.5 days per week during this period.

110.     From on or about November 1, 2019 to March 10, 2020, Ms. Liu was paid $110 per day.

111.     From on or about March 11, 2020 to March 17, 2020, Ms. Liu was paid $120 per day.

112.     From on or about November 1, 2019 to March 17, 2020, Ms. Liu worked 4 days per week.

113.     From on or about June 25, 2020 to July 5, 2020, Ms. Liu was paid $120 per day.

114.     From on or about July 6, 2020 to August 13, 2020, Ms. Liu was paid at $12 per hour.

115.     From June 25, 2020 to August 12, 2020, Ms. Liu worked either 3 or 4 days per week, on average, she worked 3.5 days per week during this period.

116.    Throughout Ms. Liu's employment at Lash Belle Eyelash Extensions Inc, she was transported to work from Flushing, NY to White Plains, NY by a company shuttle.

117.    The company shuttle would pick up Ms. Liu together with other employees, every morning at around 8:40 AM, at the intersection between Parsons Blvd and 34th Ave in Flushing NY.

118.    The company shuttle would then transport employees of Lash Belle Eyelash Extensions Inc to its store in White Plains. On average, the travel time is around 35 to 45 minutes, depending on traffic.

119.    Almost every day, Ms. Liu arrived at Defendants' store at around 9:15 AM to 9:30 AM.

120.    Upon arriving at Defendants' store, Ms. Liu would start working by doing sanitation work or other miscellaneous works.

121.    Although Ms. Liu's scheduled work time starts at 10 AM, she almost always started working before 9:30 AM.

122.    During her day at work, Ms. Liu was not afforded fixed time for lunch, she was only given at most 15 to 20 minutes to eat, and even then, when customers came in, Ms. Liu had to stop eating and serve customers.

123.    Although Ms. Liu's scheduled work time ends at 7:00 PM, she almost always worked until 7:30 PM, often beyond 7:45 PM, and occasionally worked beyond 8:00 PM.

124.    Ms. Liu's daily rate did not change regardless how many hours she worked during the day.

125.    After work, Ms. Liu would be transported back to Flushing by the same company shuttle.

126.    During Ms. Liu's employment at Lash Belle Eyelash Extensions Inc, she regularly worked more than 10 hours per day on any given workday.

127.    At all relevant times, Ms. Liu was not paid at least one and one half of her regular rate for hours worked above forty (40) in each workweek.

128.    At all relevant times, Ms. Liu was not paid at least the minimum wage under FLSA or NYLL for some of the hours she worked.

129.    Throughout her employment, Ms. Liu was not compensated for New York's spread of hours premium for shifts that lasted longer than ten (10) hours at the minimum wage.

130.    Prior to July 6, 2020, Ms. Liu was never informed of her hourly rate.

131.    At all relevant times, Ms. Liu was never informed of any tip credit deduction toward the minimum wage.

132.    At all relevant times, Defendants did not provide Ms. Liu and other similar situated employees with Time of Hire Notice detailing rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

133.    At all relevant times, Defendants did not provide Ms. Liu and all other similar situated employees with statements every payday that accurately listed all of the following: the dates of work covered by the payment of wages; the employee's name; the name of the employer; the address and phone number of employer; the employee's rate or rates of pay and basis thereof; the employee's gross wages; the employees' deductions; allowances, if any, claimed as part of the minimum wage; net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

134.    Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

135.    Defendants failed to maintain accurate and sufficient time records of employees' hours worked, failed to provide such records to employees, and failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the New York Labor Law.

136.    During all relevant times, Ms. Liu was not an exempt employee under FLSA or NYLL.

***Plaintiff Yingying Zhao***

137.    From on or about February 1, 2019 to August 10, 2020, Plaintiff Yingying Zhao was employed by Defendants to work as an eyelash stylist at 470 Mamaroneck Ave, #201, White Plains, NY 10605.

138.    From April 1, 2019 to on or about July 6, 2020, Ms. Zhao was paid on a flat daily rate.

139.    From on or about February 1, 2019 to March 31, 2019, Ms. Zhao was NOT COMPENSATED AT ALL. Ms. Zhao worked either 4 or 5 days per week during this period, on average, she worked 4.5 days per week during this period.

140.    From on or about April 1, 2019 to April 30, 2019, Ms. Zhao was paid $40 per day.

141.    From there on, Defendants would raise Ms. Zhao's daily rate by $5 every few months.

142.    From on or about May 1, 2019 to May 31, 2019, Ms. Zhao was paid $45 per day.

143.    From on or about June 1, 2019 to July 31, 2019, Ms. Zhao was paid $50 per day.

144.    From on or about August 1, 2019 to October 31, 2019, Ms. Zhao was paid 55 per day.

145.    From on or about April 1, 2019 to October 31, 2019, Ms. Zhao either worked 5 or 6 days per week, on average, she worked 5.5 days per week during this time period.

146.    From on or about November 1, 2019 to December 31, 2020, Ms. Zhao was paid $60 per day.

147.    From on or about January 1, 2020 to March 10, 2020, Ms. Zhao was paid $90 per day.

148.    From on or about March 11, 2020 to March 17, 2020, Ms. Zhao was paid $100 per day.

149.     From on or about June 26, 2020 to July 5, 2020, Ms. Zhao was paid $100 per day.

150.     From on or about July 6, 2020 to August 10, 2020, Ms. Zhao was paid at $11 per hour.

151.     From on or about November 1, 2019 to August 10, 2020, Ms. Zhao worked 4 days per week.

152.     Throughout Ms. Zhao's employment at Lash Belle Eyelash Extensions Inc, she was transported to work from Flushing, NY to White Plains, NY by a company shuttle.

153.     The company shuttle would pick up Ms. Zhao together with other employees, every morning at around 8:40 AM, at the intersection between Parsons Blvd and 34th Ave in Flushing NY.

154.     The company shuttle would then transport employees of Lash Belle Eyelash Extensions Inc to its store in White Plains. On average, the travel time is around 35 to 45 minutes, depending on traffic.

155.     Almost every day, Ms. Zhao arrived at Defendants' store at around 9:15 AM to 9:30 AM.

156.     Upon arriving at Defendants' store, Ms. Zhao would start working by doing sanitation work or other miscellaneous works.

157.     Although Ms. Zhao's scheduled work time starts at 10 AM, she almost always started working before 9:30 AM.

158.     During her day at work, Ms. Zhao was not afforded fixed time for lunch, she was only given at most 15 to 20 minutes to eat, and even then, when customers came in, Ms. Zhao had to stop eating and serve customers.

159.     Although Ms. Zhao's scheduled work time ends at 7:00 PM, she almost always worked until 7:30 PM, often beyond 7:45 PM, and occasionally worked beyond 8:00 PM.

160.     Ms. Zhao's daily rate did not change regardless how many hours she worked during the

day.

161.    After work, Ms. Zhao would be transported back to Flushing by the same company shuttle.

162.    During Ms. Zhao's employment at Lash Belle Eyelash Extensions Inc, she regularly worked more than 10 hours per day on any given workday.

163.    At all relevant times, Ms. Zhao was not paid at least one and one half of her regular rate for hours worked above forty (40) in each workweek.

164.    At all relevant times, Ms. Zhao was not paid at least the minimum wage under FLSA or NYLL for all hours worked.

165.    Throughout her employment, Ms. Zhao was not compensated for New York's spread of hours premium for shifts that lasted longer than ten (10) hours at the minimum wage.

166.    Prior to July 6, 2020, Ms. Zhao was never informed of her hourly rate.

167.    At all relevant times, Ms. Zhao was never informed of any tip credit deduction toward the minimum wage.

168.    At all relevant times, Defendants did not provide Ms. Zhao and other similar situated employees with Time of Hire Notice detailing rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

169.    At all relevant times, Defendants did not provide Ms. Zhao and all other similar situated employees with statements every payday that accurately listed all of the following: the dates of work covered by the payment of wages; the employee's name; the name of the employer; the address and phone number of employer; the employee's rate or rates of pay and basis thereof; the employee's gross wages; the employees' deductions; allowances, if any, claimed as part of the

minimum wage; net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

170.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

171.     Defendants failed to maintain accurate and sufficient time records of employees' hours worked, failed to provide such records to employees, and failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the New York Labor Law.

172.     During all relevant times, Ms. Zhao was not an exempt employee under either FLSA or NYLL.

## COLLECTIVE ACTION ALLEGATIONS

173.     Plaintiffs bring this action individually and as class representatives on behalf of all other similar situated current and former non-exempt employees who have been employed by Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and those who were not compensated at one and one half times their regular hourly rate for all hours worked in excess of forty (40) hours per workweek, and those who were not compensated minimum wage for all hours worked (the "Collective Action Members").

## STATEMENT OF CLAIMS

### COUNT I

**[Violations of New York Labor Law—Minimum Wage/ Unpaid Wage**

**Brought on Behalf of Plaintiffs]**

174.     Plaintiffs repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

175. At all relevant times, Plaintiffs were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

176. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs for some or all of the hours they worked.

177. Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay them minimum wages in the lawful amount for hours worked.

178. By failing to pay Plaintiffs, Plaintiffs are entitled to recover from Defendants their full unpaid wage, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursement of the action, and interest pursuant to NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and NY Wage Theft Prevention Act (NYWTPA).

## COUNT II

### [Violation of Fair Labor Standards Act— Unpaid Wages

### Brought on Behalf of Plaintiffs and the FLSA Collective]

179. Plaintiffs repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

180. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and the similarly situated collective action members, for some or all of the hours they worked.

181. The FLSA provides that any employer who violates the provisions of 29. U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

182. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective action Members for some or all of their hours worked when Defendants knew or should have known that their actions would financially injure

Plaintiffs and Collective Action Members.

## COUNT III

### [Violation of Fair Labor Standards Act— Failure to Pay Overtime

### Brought on Behalf of Plaintiffs and the FLSA Collective]

183.    Plaintiffs repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

184.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a workweek longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one half times the regular rate at which he is employed, or one and one half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

185.    The FLSA provides that any employer who violates the provision of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

186.    Defendants' failure to pay Plaintiffs and the FLSA Collective their proper overtime rate violated the FLSA.

187.    At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay the proper overtime rate to Plaintiffs and FLSA Collective members at one and one half times of their regular hourly rate for all hours worked in excess of forty (40) per workweek, which violated and continues to violate the FLSA. 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

188.    The FLSA and supporting regulations requires employers to notify employees of

employment law requirements. 9 C.F.R. § 516.4.

189.    Defendants willfully failed to notify Plaintiffs and FLSA collective members of the requirements of the employment law in order to facilitate their exploitation of Plaintiffs and FLSA collective's labor.

190.    Defendants knew or should have known that by failing to pay Plaintiffs and FLSA collective the proper overtime rate, Plaintiff and FLSA collective members would be financially injured.

## COUNT IV

### [Violation of New York Labor Law — Failure to Pay Overtime
### Brought on Behalf of Plaintiffs]

191.    Plaintiffs repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

192.    At all relevant times, Defendants failed to pay Plaintiffs' overtime wages for hours worked in excess of forty (40) hours per week at a wage rate of one and one half (1.5x) times the regular wage to which Plaintiffs were entitled under New York Labor Law §652, in violation of 12 NYCRR §137-1.3.

193.    Due to Defendants' violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime age and an amount equal to their unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest in accordance with NYLL §198(1-a).

## COUNT V

### [Violation of New York Labor Law— Failure to Provide Time of Hire Notice

**Brought on Behalf of Plaintiffs]**

194.     Plaintiffs repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

195.     NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances. If any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

196.     Defendants failed to provide such notice to Plaintiffs or any other employee at the time of their hiring, or ten days within their hiring.

197.     Due to Defendants' violation, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that violation occurred or continued to occur, up to $5000, together with cost and attorney's fees pursuant to NYLL § 198.

## COUNT VI

**[Violation of New York Labor Law— Failure to Provide Pay Statement**

**Brought on Behalf of Plaintiffs]**

198.     Plaintiffs repeat, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

199.     NYLL and supporting regulations require employers to provide detailed pay statement information to employees every payday. NYLL § 195-1(d).

200.     Defendants failed to provide such pay statement to Plaintiffs or any other employee on

the day they get paid.

201. Due to Defendants' violation, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday that violation occurred or continued to occur, up to $5000, together with cost and attorney's fees pursuant to NYLL § 198.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, and the FLSA Collective Action Members, respectfully request that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they wish to pursue their claims;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similar situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state law claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members.

d) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e) An injunction against Corporate Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as

provided by law, from engaging in each of the unlawful practices and policies set forth herein;

f)      An award of unpaid wage and overtime wages due under the FLSA and NYLL plus compensatory and liquidated damages in the amount of one hundred percent (100%) under NY Wage Theft Prevention Act;

g)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, pursuant to 29 U.S.C. § 216.

h)      Up to $5,000.00 per Plaintiff for Defendants' failure to provide a time of hire notice detailing rates of pa and payday;

i)      Up to $5,000.00 per Plaintiff for Defendants' failure to provide a paystub that conforms with NYLL § 195(3).

j)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, and spread of hours premiums pursuant to NYLL;

k)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

l)      The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent as required by NYLL § 198(4); and

o)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
      August 17, 2020

Respectfully submitted,


Dong, Adam's Law Firm PLLC


      /s/ Adam Dong
Adam Dong, Esq. (AD 6544)
3708 Main St, Ste 308
Flushing, NY 11354
Tel: (929) 269-5666
Email: adam.dong@dongadams.com

*Attorneys for the Plaintiffs, and FLSA*
*collective*